1 Bridget A. Moorhead (SBN CA 166298)
bmoorhead@selmanlaw.com
2 SELMAN BREITMAN LLP
101 W. Broadway, Suite 1330
3 San Diego, CA 92101
Telephone: 619.564.3600
4 Facsimile: 619.564.3636

5 Sheryl W. Leichenger (SBN 161688)
Debra B. Branse (SBN 175771)
6 sleichenger@selmanlaw.com
dbranse@selmanlaw.com
7 SELMAN BREITMAN LLP
33 New Montgomery, Sixth Floor
8 San Francisco, CA 94105-4537
Telephone: 415.979.0400
9 Facsimile: 415.979.2099

10 Attorneys for Defendant UNIVERSAL NORTH AMERICA
INSURANCE COMPANY
11

12 UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| 14 LESLIE JOHNSON-KILLION, | Case No. 3:21-CV-03112-MMC |
| 15     Plaintiffs, | DEFENDANT UNIVERSAL NORTH |
| 16     v. | AMERICA INSURANCE COMPANY'S MEMORANDUM OF POINTS AND |
| 17 UNIVERSAL NORTH AMERICA INSURANCE COMPANY and DOES 1-20, | AUTHORITIES IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT/OPPOSITION TO |
| 18     Defendants. | PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT RE ONE-YEAR SUIT |
| 19 | LIMITATION AND CONTRACT INTERPRETATION |

20 Date      :   January 21, 2022
Time      :   9:00 a.m.
21 Ctrm.    :   (Via Zoom)
Judge    :   Maxine M. Chesney
22 Trial      :   None Set

23

24 ///

25 ///

26 ///

27 ///

28 ///

1

Universal's Points & Authorities In Support Of Cross Motion For Summary Judgment/Opposition To Plaintiff's
Motion For Summary Judgment – Case No. 3:21-cv-03112-MMC

4895 100153 4842-5432-0802 v3

Selman Breitman LLP
ATTORNEYS AT LAW

**TABLE OF CONENTS**

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 6

II.   STATEMENT OF FACTS ........................................................................... 7

      A.    The Universal Homeowner Policy ................................................... 7

      B.    Plaintiff's Fire Claim ................................................................. 11

III.  LEGAL STANDARD ON SUMMARY JUDGMENT ........................................... 12

IV.   PLAINTIFF'S LAWSUIT IS BARRED BY THE ONE-YEAR
      CONTRACTUAL SUIT LIMITATION PROVISION IN THE
      UNIVERSAL POLICY ............................................................................. 13

      A.    The Universal Policy Contains An Enforceable One-Year
            Contractual Suit Limitation Period ................................................ 13

      B.    Universal Was Not Required to Give Written Notice to the
            Insured of the Contractual Suit Limitations Period Because
            Coverage Was Accepted and the Claim Was Paid ........................... 15

      C.    Universal's Payment for Debris Removal to the County of
            Sonoma Did Not Toll the Limitations Period Until October 4,
            2019 ...................................................................................... 15

V.    UNIVERSAL PAID ALL CONTRACTUAL BENEFITS OWED TO
      PLAINTIFF UNDER THE POLICY ............................................................... 17

      A.    Under California Insurance Code Section 2051.5, When the
            Insured Purchases Another Home, Replacement Cost Is Based on
            the Cost to Rebuild the Insured Property at the Insured Location ....... 17

      B.    The Lesser of The Policy Limits, the Replacement Cost Value
            (RCV) Based On The Cost To Rebuild At The Insured Premises,
            Or the Actual Amount Spent To Replace Is The Proper Measure
            of Dwelling Coverage A Policy Benefits ....................................... 17

      C.    Plaintiff Did Not Make a Claim for Additional Dwelling
            Coverage Policy Benefits Under the Endorsement Based On a
            Replacement Cost Estimate and Should Be Barred From Seeking
            Recovery in this Lawsuit ........................................................... 20

      D.    Universal is Not Obligated to Pay Plaintiff Additional Debris
            Removal Coverage Amounts Under the Policy Because Plaintiff
            Assigned Her Right to Debris Removal Coverage to the County

2

4895 100153 4842-5432-0802 v3

of Sonoma ................................................................................... 22

VI.        CONCLUSION .................................................................................. 23

**Selman Breitman** LLP
ATTORNEYS AT LAW

Universal's Points & Authorities In Support Of Cross Motion For Summary Judgment/ Opposition To Plaintiff's
Motion For Summary Judgment – Case No. 3:21-cv-03112-MMC

4895.100153.4842-5432-0892_v3

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Addisu v. Fred Meyer, Inc.* (9th Cir. 2000)
  198 F.3d 1130 .................................................................................................13

*Bank of Am. Nat. Tr. & Sav. Ass'n v. Allstate Ins. Co.* (C.D. Cal. 1998)
  29 F. Supp. 2d 1129 .........................................................................................13

*Campanelli v. Allstate Ins. Co.* (C.D. Cal. 2000)
  85 F.Supp.2d 980 .............................................................................................14

*Campanelli v. Allstate Life Ins. Co.* (9th Cir. 2003)
  322 F.3d 1086 ...........................................................................................13, 16

*Celotex Corp. v. Catrett* (1986)
  477 U.S. 317 ....................................................................................................13

*Finkelstein v. AXA Equitable Life Ins. Co.* (C.D. Cal. 2018)
  325 F.Supp.3d 1061 .........................................................................................15

*Hong v. AXA Equitable Life Ins. Co.* (N.D. Cal. 2018)
  2018 WL 6331012 ............................................................................................15

*Lyle Turner et al. v. Fed. Ins. Co.* (C.D. Cal. 2021)
  2021 WL 4894272 ............................................................................................23

*Moncada v. Allstate Ins. Co.* (N.D. Cal. 2006)
  471 F.Supp.2d 987 ...........................................................................................20

*SEMX Corp. v. Federal Ins. Co.* (S. D. Cal. 2005)
  398 F.Supp.2d 1103 .........................................................................................15

*Tyler v. Travelers Com. Ins. Co.* (N.D. Cal. 2020)
  499 F. Supp. 3d 693 .........................................................................................18

*Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program* (9th Cir.
  2000) 222 F.3d 643 ....................................................................................14, 16

**California Cases**

*Conway v. Farmers Home Mut. Ins. Co.* (1994)
  26 Cal. App. 4th 1185 ......................................................................................18

*Executive Risk Indem., Inc. v. Jones* (2009)
  171 Cal.App.4th 319 ........................................................................................22

4

4895 100153 4842-5432-0892_v3

*Fire Ins. Exch. v. Superior Ct.* (2004)
   116 Cal. App. 4th 446 ............................................................................21

*Jang v. State Farm Fire & Cas. Co.* (2000)
   80 Cal.App.4th 1291 ..........................................................................14

*Janney v. CSAA Ins. Exch.* (Cal. 3rd Dist. App. October 15, 2021)
   2021 WL 4810353 ..............................................................................23

*McCorkle v. State Farm Ins. Co.* (1990)
   221 Cal.App.3d 610 ............................................................................22

*Prieto v. State Farm Fire & Cas. Co.* (1990)
   225 Cal.App.3d 1188 ..........................................................................14

*Prudential-LMI Comm'l Ins. v. Sup.Ct.* (1990)
   51 Cal.3d 674 ....................................................................................14

**California Statutes**

California Insurance Code
   § 2051.5 ................................................................................7, 17-19

California Insurance Code
   § 2071 ................................................................................................21

**Other Authorities**

California Code of Regulations, §§ 2695.4 and 2695.7 ............................................6

California Code of Regulations, §§ 2695.4(a) and 2695.7(f) ..................................15

Federal Rules of Civil Procedure Rule 56(a) ........................................................12

California Rule of Court, Emergency Rule 9 ........................................................16

Selman Breitman LLP
ATTORNEYS AT LAW

5

Universal's Points & Authorities In Support Of Cross Motion For Summary Judgment/ Opposition To Plaintiff's
Motion For Summary Judgment – Case No. 3:21-cv-03112-MMC

4895.100153.4842-5432-0802 v3

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant Universal North America Company ("Universal") submits this motion pursuant to the Court's July 30, 2021 Minute Order directing the parties to submit cross summary judgment motions on the following issues: (1) statute of limitations and (2) contract interpretation. [Doc Nos. 16, 21]

Plaintiff, Leslie Johnson-Killion ("Plaintiff"), filed the present action against Defendant, Universal North America Insurance Company ("Universal"), asserting causes of action for: (1) breach of contract and (2) bad faith in connection with the fire damage claim she made under the homeowner policy issued to her by Universal. (Complaint, **Exhibit 1** to Compendium of Exhibits ("COE").)[1]  Plaintiff's fire claim was covered under her homeowners' policy and Universal paid $584,351.48 in policy benefits to Plaintiff.

The Universal policy includes a one-year suit limitation period which required Plaintiff to bring any suit in connection with the policy within one year of the loss.  Plaintiff's loss occurred on October 9, 2017 and was reported to Universal that same day.  The one-year suit limitation period was tolled through August 8, 2018, the date Universal notified Plaintiff in writing that all policy benefits had been paid.  Based on that date, the suit limitation period expired on August 8, 2019, almost two years before Plaintiff filed the Complaint on March 18, 2021.

Plaintiff does not dispute that the policy includes a one-year suit limitation provision which applies here.  However, Plaintiff asserts that under California Code of Regulations, sections 2695.4 and 2695.7, Universal is estopped from relying on the one-year contractual suit limitations provision because Universal did not provide notice of the provision to Plaintiff during the claim.  However, under well-established California law interpreting those statutes, those statutes do not apply to paid claims and therefore, Plaintiff's lawsuit is barred by the one-year suit limitation period.

With respect to the policy interpretation issues, if Plaintiff can overcome the suit limitation, Plaintiff asserts that Universal owes $77,000 of additional Dwelling Coverage for the

---

[1] All referenced exhibits are attached to the COE.

4895.100153.4842-5432-0802 v3

Selman Breitman LLP
ATTORNEYS AT LAW

Selman Breitman LLP
ATTORNEYS AT LAW

1 | cost to purchase a new home in Virginia based on the Additional Dwelling Coverage A

2 | Endorsement ("Dwelling Coverage Endorsement").  (Plaintiff's MSJ, pp. 21-23.)  Plaintiff's

3 | interpretation of the Dwelling Coverage is incorrect as the only proper valuation method for the

4 | Dwelling Coverage is the lesser of three potential measures of indemnity for the insured loss: (1)

5 | the policy limit, (2) the replacement cost, or (3) the amount actually spent to replace the building.

6 | Under California Insurance Code section 2051.5, where the insured purchases a home at another

7 | location, the replacement cost is based on the estimated cost to rebuild the insured property at the

8 | insured premises at the time of the fire in October 2017.  Here, Universal paid the full $338,000

9 | Coverage A – Dwelling limit as the additional coverage provided under the Additional Dwelling

10 | Coverage Endorsement does not apply to Plaintiff's loss because the three cost to rebuild

11 | estimates obtained by Universal at the time of the loss did not exceed the $338,000 policy limits.

12 | Plaintiff also incorrectly asserts that Universal owes Plaintiff an additional $63,142.41 for

13 | debris removal coverage under the Ordinance or Law Increased Amount of Coverage

14 | Endorsement ("Ordinance Endorsement") despite the undisputed fact that Plaintiff assigned her

15 | right to debris removal coverage to the County of Sonoma.  (Plaintiff's MSJ, Fact No. 5,

16 | Plaintiff's Exhibit 3.)  Pursuant to the assignment, Universal, and not Plaintiff, was billed by the

17 | County of Sonoma for debris removal and Universal paid the County of Sonoma for debris

18 | removal.  Plaintiff has provided no evidence that she was billed by the County of Sonoma for

19 | debris removal or that she incurred any expense for debris removal.

20 | Based on the foregoing, Universal requests that the court grant summary judgment on the

21 | one-year suit limitation provision, the policy provisions governing Loss Settlement for Dwelling

22 | Coverage A, and/or partial summary judgment as to no coverage for debris removal incurred by

23 | the County of Sonoma based on Plaintiff's assignment of that coverage to the County of

24 | Sonoma.

25 | **II.      STATEMENT OF FACTS**

26 | **A.      The Universal Homeowner Policy**

27 | Universal issued Homeowner Policy No. CAVH0000054128 to Plaintiff for the period

28 | July 15, 2017 to July 15, 2018 (the "Policy) which includes the following policy limits:

7

4895 100153 4842-5432-0802 v3

| | |
|---|---|
| Coverage A. Dwelling | $338,000 |
| Coverage B. Other Structures | $33,800 |
| Coverage C. Personal Property | $169,000 |
| Coverage D. Loss of Use | $67,600 |
| Debris Removal Coverage | 5% of limit |
| Trees, Shrubs and Other Plants | 5% of limit |
| Ordinance and Law Coverage | 25% of limit |

(Declaration of Donald M. Grimm ("Grimm Decl."), ¶ 5, **Exhibit 2**.)  The Policy also provides

Specified Additional Dwelling Coverage A up to 25% of the policy limit under endorsement

form HO 23 56 (12/05), which amount is at issue here.  (Grimm Decl., ¶ 6.)

Coverage A – Dwelling Coverage insures against risks of direct physical loss to the

dwelling, but does not cover the land on which the dwelling is located:

**SECTION I - PROPERTY COVERAGES**

**A. Coverage A - Dwelling**

1.      We cover:

      a.      The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

      b.      Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

2.      We do not cover land, including land on which the dwelling is located.

(Policy, **Exhibit 2**, p. Universal000008.)

The following provision governs Loss Settlement for Dwelling Coverage A:

**SECTION I – CONDITIONS**

**C. Loss Settlement**

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

           \*\*\*

2.      Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

Selman Breitman LLP
ATTORNEYS AT LAW

8

4895.100153.4842-5432-0802 v3

a.    If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:

    (1)    The limit of liability under this policy that applies to the building;

    (2)    The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

    (3)    The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

\*\*\*

d.    We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.  Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **b.** above.

(Policy, **Exhibit 2**, pp. Universal0000018-19.)

The Policy includes endorsement form HO 23 56 (12/05), Specified Additional Amount of Insurance for Coverage A – Dwelling – California, which provides additional coverage up to 25% of the policy limits, as follows:

**SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A – DWELLING – CALIFORNIA**
**FORMS HO 00 02 AND HO 00 03 AND HO 0005 ONLY**

**(APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS)**

**SCHEDULE**

| |
|---|
| Additional Amount Of Insurance:<br>———— % <br><br>The Additional Amount Of Insurance is determined by multiplying the Coverage A Limit Of Liability shown in the Declarations by the percentage amount shown above. |
| Entry may be left blank if shown elsewhere in this policy for this coverage. |

To the extent that coverage is provided, we agree to provide an additional amount of insurance in accordance with the following provisions:

\*\*\*

B.    If there is a loss to the building insured under Coverage **A** that exceeds the

9

Selman Breitman LLP
ATTORNEYS AT LAW

4895.100153 4842-5432-0802 v3

Coverage **A** limit of liability shown in the Declarations, for the purpose of settling that loss only:

1.     We will provide an additional amount of insurance, up to the amount described in the Schedule above; and

2.     Section I - Condition C. **Loss Settlement** Paragraph 2. is deleted and replaced by Paragraphs 2. and 3. as follows:

    2.     The building insured under Coverage A at replacement cost without deduction for depreciation. We will pay no more than the smallest of the following amounts:

        a.     The replacement cost of that part of the building damaged with material of like kind and quality and for like use;

        b.     The necessary amount actually spent to repair or replace the damaged building; or

        c.     The limit of liability under this policy that applies to the building, plus any additional amount provided by this endorsement.

    If the building is rebuilt at a new premises, the cost described in a. above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

    3.     We will pay no more than actual cash value of the damage until actual repair or replacement is complete.
    We must be notified within:

        a.     24 months after our payment for actual cash value if the loss or damage relates to a state of emergency under California Law; or

        b.     12 months after our payment for actual cash value in all other cases;

    that you intend to repair or replace the damaged property.

All other provisions of this policy apply.

The Policy Forms and Endorsements in the Declarations indicates that the Specified Additional Coverage A – Dwelling Coverage provided in endorsement form HO 23 56 is 25% of the policy limit ($338,000 limit x 25% = $84,500).

(Policy, **Exhibit 2**, pp. Universal0000048-49.)

The Policy provides Additional Coverage for debris removal and increased costs caused by ordinance or law as follows:

**E.**     **Additional Coverages**

**1.**     **Debris Removal**

    a.     We will pay your reasonable expense for the removal of:

10

4895.100153.4842-5432-0802.v3

Selman Breitman LLP
ATTORNEYS AT LAW

(1)    Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2)    Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

\* \* \*

The Policy also includes a one-year contractual suit limitations provision in endorsement form UN 10 08 (09/15):

**SPECIAL PROVISIONS – CALIFORNIA**

**G. Suit Against Us** is replaced by the following:

**G.  Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within one year after the date of loss.

(Policy, **Exhibit 2**, pp. Universal 000036.)

**B.    Plaintiff's Fire Claim**

On October 9, 2017, a massive wildfire known as the Tubbs Fire swept through Lake County in Santa Rosa, California destroying many homes including Plaintiff's home located at 1911 San Miguel Road in Santa Rosa, California.  (Grimm Decl. ¶ 7, Complaint, ¶ 5.)  Plaintiff reported the loss to Universal that same day and the claim was assigned Claim No. 1701CA24001640.  (Grimm Decl. ¶ 8.)  Between October 9, 2017 and April 13, 2018, Universal issued policy benefit payments to Plaintiff in the amount of $584,351.48, which included $338,000 in policy limits for Dwelling Coverage A.  (Grimm Decl. ¶ 9.)

From November 4, 2017 to June 27, 2018, Universal obtained three construction estimates to rebuild Plaintiff's house at the insured location to determine if the replacement cost exceeded the $338,000 policy limits, which would trigger the Additional Dwelling Coverage-A Endorsement allowing up to $84,500 (for a total $422,400) in additional Dwelling Coverage benefits. (Grimm Decl. ¶ 10.)  On November 28, 2017, Universal obtained a cost to rebuild estimate from Rimkus Consulting Group in the amount of $211,274.29 (ACV) and $303,002.39

11

1   (RCV).  (Grimm Decl. ¶ 11.) On March 28, 2018, Plaintiff purchased a replacement home in

2   Chesterfield, Virginia.  (Grimm Decl. ¶ 12.) On April 9, 2018, Universal obtained a cost to

3   rebuild estimate from Service Team of Professionals in the amount of $306,646.52 (RCV).

4   (Grimm Decl. ¶ 13.) On June 27, 2018, Universal obtained a third cost to rebuild estimate from

5   Lawton Construction and Restoration in the amount of $288,133.73 (RCV).  (Grimm Decl. ¶ 14.)

6       Because none of the replacement cost estimates exceeded the $338,000 policy limits,

7   Universal advised Plaintiff on August 8, 2018, that no additional policy benefits were owed

8   under the Specified Additional Dwelling Coverage A Endorsement, which provided 25% in

9   additional replacement cost.  (Grimm Decl. ¶ 15.) Up to that time, Universal had paid to Plaintiff

10  the policy limits for Coverage A, Coverage C, and Tree/Shrubs Coverage, and paid out

11  $40,451.48 for temporary housing and $20,000 for additional living expenses under Coverage D

12  (Loss of Use).  Because Plaintiff did not rebuild her home or provide documentation to support

13  the "increased costs she incurred due to the enforcement of any ordinance or law", Universal did

14  not pay Ordinance and Law Coverage (Grimm Decl. ¶ 16.)

15      On November 12, 2017, Plaintiff executed a Right of Entry Agreement with the County

16  of Sonoma wherein Plaintiff assigned her right to Debris Removal Coverage under the Policy to

17  the County.  (Grimm Decl. ¶ 17.) On September 29, 2019, after all policy benefits had been paid

18  out to Plaintiff, Universal received an invoice from the County of Sonoma for debris removal

19  services provided in connection with Plaintiff's loss.  (Grimm Decl. ¶ 18.) According to the

20  Right of Entry Agreement, Plaintiff was not obligated to pay any portion of the debris removal

21  invoice and was not responsible for any amounts not covered under the Universal policy.  (See

22  Plaintiff's **Exhibit 3**, pp. 2-3, highlighted provisions.) On October 4, 2019, Universal issued a

23  payment for the policy limits under the Debris Removal Coverage in the amount of $16,900 to

24  the County of Sonoma.  (Grimm Decl. ¶ 19.)

25      Plaintiff filed the present action against Universal on March 18, 2021.

26  III.  **LEGAL STANDARD ON SUMMARY JUDGMENT**

27      Federal Rules of Civil Procedure Rule 56(a) provides that summary judgment, or partial

28  summary judgment, should be granted if "there is no genuine dispute as to any material fact and

Selman Breitman LLP
ATTORNEYS AT LAW

12

4895.100153 4842-5432-0802 v3

the movant is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(a); *Addisu v. Fred Meyer, Inc.* (9th Cir. 2000) 198 F.3d 1130, 1134. As the moving party, Universal bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323. Where the nonmoving party has the burden of proof at trial on a particular issue, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Summary judgment, or partial summary judgment, should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

## IV.   PLAINTIFF'S LAWSUIT IS BARRED BY THE ONE-YEAR CONTRACTUAL SUIT LIMITATION PROVISION IN THE UNIVERSAL POLICY

### A.   The Universal Policy Contains An Enforceable One-Year Contractual Suit Limitation Period

The Universal Policy includes a one-year suit limitation provision which provides as follows:

> No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within one year after the date of loss.

(Policy, Special Provisions – California Endorsement, Section I. G., **Exhibit 2**, p. Universal000036.) A suit limitation is not a statute of limitations, but a contractual obligation for all claims brought under an insurance policy. *Campanelli v. Allstate Life Ins. Co.* (9th Cir. 2003) 322 F.3d 1086, 1093. The one-year limitation period applies to all claims under the policy including bad faith claims. *Id.*; *Bank of Am. Nat. Tr. & Sav. Ass'n v. Allstate Ins. Co.* (C.D. Cal. 1998) 29 F. Supp. 2d 1129, 1134 (holding that "the one-year statute of limitations applies to actions on the policy, whether they are based on contract or on the implied covenant of good faith and fair dealing"). Such provisions "create enforceable contractual limitations periods for

13

4895 100153 4842-5432-0802  v3

Selman Breitman LLP
ATTORNEYS AT LAW

1   bringing suit on an insurance contract." *Wetzel v. Lou Ehlers Cadillac Group Long Term*

2   *Disability Ins. Program* (9th Cir. 2000) 222 F.3d 643, 647-648.  This is true even where the suit

3   limit in the policy is shorter than provided in the applicable statute of limitations.  *Id.* While such

4   provisions function as statutes of limitation in that they limit the time within which a suit can be

5   brought, they are contractual limits which are subject to the same rules governing contract

6   interpretation.  *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program, supra,*

7   222 F.3d at 648.

8        A suit limitations period begins to run from that point in time when the loss occurs and is

9   or should be known to the insured.  *Prudential-LMI Comm'l Ins. v. Sup.Ct.* (1990) 51 Cal.3d 674,

10  686-687.  However, the limitation period is deemed equitably tolled from the time the insured

11  gives notice of the loss until the time the insurer formally denies coverage in writing. *Campanelli*

12  *v. Allstate Ins. Co.* (C.D. Cal. 2000) 85 F.Supp.2d 980, 983; *Prudential-LMI Comm'l Ins. v.*

13  *Sup.Ct., supra,* 51 Cal.3d at 687; *Jang v. State Farm Fire & Cas. Co.* (2000) 80 Cal.App.4th

14  1291, 1300-01; *Prieto v. State Farm Fire & Cas. Co.* (1990) 225 Cal.App.3d 1188, 1195

15  (holding a one-year suit limitation provision was tolled while the insurer considered the claim).

16       Here, Plaintiff's loss occurred on October 9, 2017, the same date Plaintiff reported the

17  loss to Universal.  Between October 9, 2017 and August 8, 2018, during which time Universal

18  adjusted the claim and paid **$584,351.48** in policy benefits to Plaintiff, the one-year suit

19  limitation period was tolled.  Universal's August 8, 2018 correspondence to Plaintiff gave

20  written notice of its position that the policy limit amount of $338,000 paid under Coverage A for

21  Plaintiff's insured dwelling was the maximum amount available for Dwelling Coverage and that

22  no additional benefits were owed under the Policy.  At no time between the August 8, 2018 letter

23  and this lawsuit did Plaintiff contest the amount paid by Universal for the claim.  The one-year

24  contractual limitation period, therefore, began to run on August 8, 2018 and expired on August 8,

25  2019.  Because Plaintiff did not file the Complaint until March 18, 2021, more than three years

26  after the loss and more than two years after the claim was paid, Plaintiff's lawsuit is barred by

27  the one-year suit limitation provision in the Universal Policy.

28  / / /

14

4895.100153.4842-5432-0802.v3

*Selman Breitman* LLP
ATTORNEYS AT LAW

**B.** **Universal Was Not Required to Give Written Notice to the Insured of the Contractual Suit Limitations Period Because Coverage Was Accepted and the Claim Was Paid**

Plaintiff contends that Universal is estopped from relying on the one-year contractual limitations period in the Policy because Plaintiff was not advised of the contractual limitations period to Plaintiff as required in California Code of Regulations, sections 2695.4(a) and 2695.7(f).  (Plaintiff's Motion, pp. 5-14.)  Section 2695.4(a) provides in relevant part:

> Every insurer shall disclose to a first party claimant or beneficiary, all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply to the claim presented by the claimant.

Section 2695.7(f) provides in relevant part:

> <u>Except where a claim has been settled by payment,</u> every insurer shall provide written notice of any statute of limitation or other time period requirement upon which the insurer may rely <u>to deny a claim.</u>  (emphasis added)

Section 2695.7(f) only applies to the denial of a claim and does not apply to a claim such as this claim that was settled by payment of the policy limits.  *Finkelstein v. AXA Equitable Life Ins. Co.* (C.D. Cal. 2018) 325 F.Supp.3d 1061, 1068; *Hong v. AXA Equitable Life Ins. Co.* (N.D. Cal. 2018) 2018 WL 6331012 *5; *SEMX Corp. v. Federal Ins. Co.* (S.D. Cal. 2005) 398 F.Supp.2d 1103, 1110-1113.   Both the *Spray, Gould & Bowers* and *Superior Dispatch* cases relied upon by Plaintiff are inapplicable to the facts presented in this case as they involved claims that were denied by the insurer.  Here, Universal accepted coverage for the first party fire claim and paid out the policy limits for each coverage.  California courts have not extended the rule of *Spray* to cases where an insurer accepts coverage. *SEMX Corp.* at 1112.  The court in *SEMX* also held that the more general section 2695.4 is trumped by the more specific section 2695.7(f), which specifically addresses the settlement of a claim and, therefore, Plaintiff's estoppel argument based on section 2695.4 also fails.  *Id.* at 1112.

**C.** **Universal's Payment for Debris Removal to the County of Sonoma Did Not Toll the Limitations Period Until October 4, 2019**

Even if Plaintiff argues that the one-year suit limitation period did not start to run until the date of Universal's payment to the County of Sonoma for debris removal on October 4, 2019, the lawsuit is still barred by the one-year suit limitation period for several reasons: (1) The

15

Selman Breitman LLP
ATTORNEYS AT LAW

1   amount paid out on the claim in October 2019 was for debris removal, coverage for which was

2   assigned to the County of Sonoma, so that coverage was no longer part of Plaintiff's claim to

3   Universal (Universal **Exhibit 11**) and (2) even if the limitations period was tolled until October

4   4, 2019, the COVID-19 tolling period under California Rule of Court, Emergency Rule 9(a),

5   does not apply to a contractual limitations period.

6         Emergency Rule 9 provides for tolling of statutes of limitations for civil causes of action

7   as follows:

8       (a)    Tolling Statutes of Limitations Over 180 Days. Notwithstanding any other laws,
                the statutes of limitations and repose for civil causes of action that exceed 180
9                   days are tolled from April 6, 2020, until October 1, 2020.

10       (b)    Tolling Statutes of Limitations of 180 Days or Less. Notwithstanding any other
                law, the statutes of limitations and repose for civil causes of action that are 180
11                   days or less are tolled from April 6, 2020, until August 3, 2020.

12   *Cal.R.Ct.*, App. I, Rule 9.

13   Emergency Rule 9 is intended to toll any statute of limitation for the filing of a pleading which

14   asserts a civil cause of action. While Emergency Rule 9 applies to special proceedings of a civil

15   nature and to statutes of limitations found in codes other than the Civil Code, it does not apply to

16   contractual limitation periods which are not statutes of limitations. *Campanelli v. Allstate Life*

17   *Ins. Co.* (9th Cir. 2003) 322 F.3d 1086, 1093 (a suit limitation is not a statute of limitations, but a

18   contractual obligation for all claims brought under an insurance policy); *Wetzel v. Lou Ehlers*

19   *Cadillac Group Long Term Disability Ins. Program* (9th Cir. 2000) 222 F.3d 643, 647-648 (suit

20   limitation provisions "create enforceable contractual limitations periods for bringing suit on an

21   insurance contract.").  The Universal suit limitation provision is a contractual obligation and is

22   not a statute of limitations subject to Emergency Rule 9.  Because Emergency Rule 9 does not

23   apply to toll the one-year suit limitation period, that period expired, at the latest, on October 4,

24   2020. Plaintiff's Complaint was not filed until March 18, 2021 and it is, therefore, barred by that

25   suit limitation provision.

26   / / /

27   / / /

28   / / /

4895.100153 4842-5432-0802 v3

V.    **UNIVERSAL PAID ALL CONTRACTUAL BENEFITS OWED TO PLAINTIFF UNDER THE POLICY**

    A.    **Under California Insurance Code Section 2051.5, When the Insured Purchases Another Home, Replacement Cost Is Based on the Cost to Rebuild the Insured Property at the Insured Location**

California Insurance Code, section 2051.5 in effect at the time of the loss in 2017 provides, in pertinent part:

> (a) Under an open policy that requires payment of the replacement cost for a loss, the measure of indemnity is the amount that it would cost the insured to repair, rebuild, or replace the thing lost or injured, without a deduction for physical depreciation, or the policy limit, whichever is less. If the policy requires the insured to repair, rebuild, or replace the damaged property in order to collect the full replacement cost, the insurer shall pay the actual cash value of the damaged property, as defined in Section 2051, until the damaged property is repaired, rebuilt, or replaced. Once the property is repaired, rebuilt, or replaced, the insurer shall pay the difference between the actual cash value payment made and the full replacement cost reasonably paid to replace the damaged property, up to the limits stated in the policy.

* * *

> (c) In the event of a total loss of the insured structure, no policy issued or delivered in this state may contain a provision that limits or denies payment of the replacement cost in the event the insured decides to rebuild or replace the property at a location other than the insured premises. *However, the measure of indemnity shall be based upon the replacement cost of the insured property and shall not be based upon the cost to repair, rebuild, or replace at a location other than the insured premises.*

Cal. Code Reg., § 2051.5[2].  Pursuant to the statute, the replacement cost is based on the hypothetical cost to rebuild the insured property at the insured location even when the insured purchases a home at another location, as Plaintiff did.

    B.    **The Lesser of The Policy Limits, the Replacement Cost Value (RCV) Based On The Cost To Rebuild At The Insured Premises, Or the Actual Amount Spent To Replace Is The Proper Measure of Dwelling Coverage A Policy Benefits**

The Loss Settlement provision in the Policy governs how policy benefits for Dwelling Coverage are paid.  Under the Loss Settlement provision, when the insured property is replaced, the Policy provides that Universal "will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following

---

[2]  Added by Stats.2004, c. 311 (A.B.2199), § 1, eff. Aug. 25, 2004.

17

Selman Breitman LLP
ATTORNEYS AT LAW

4895.100153.4842-5432-0802.v3

1   amounts:"

2       1.   The limit of liability under this policy that applies to the building;

3       2.   The replacement cost of the damaged building; or

4       3.   The amount actually spent to replace the damaged building.

5   Consistent with the statute, California courts considering similar issues have concluded that

6   where an insured purchases a new home instead of repairing or rebuilding the damaged home,

7   the RCV is based on what it would have cost to repair or replace the insured structure at the

8   insured location. *Conway v. Farmers Home Mut. Ins. Co*. (1994) 26 Cal. App. 4th 1185, 1192;

9   *Tyler v. Travelers Com. Ins. Co*. (N.D. Cal. 2020) 499 F. Supp. 3d 693, 697.

10       In *Conway v. Farmers Home Mut. Ins. Co*., *supra*, 26 Cal.App.4th at 1192, the court held

11   that purchase of a new home qualifies as replacement of the insured property under a

12   homeowners policy.  Where a new home is purchased, however, payment of the loss is based on

13   the cost to replace the damaged building at the insured location. *Id.* at 1190. The policy at issue

14   in *Conway* included the same loss settlement limitations at issue here which provide coverage for

15   replacement cost, the amount actually spent to rebuild, or the policy limit, <u>whichever is less</u>.  *Id.*

16   at 1188. Because the insured in *Conway* purchased a new home instead of rebuilding the insured

17   home and because the replacement cost was less than the policy limit, the court opined that

18   replacement cost was the proper amount owed.

19       In *Tyler v. Travelers Com. Ins. Co., supra,* 499 F.Supp.3d at 697, the court addressed a

20   similar dispute regarding the proper measure of coverage where an insured elected to purchase a

21   replacement home at a different location.  In that case, the plaintiff's home in California was

22   destroyed by fire and plaintiff elected to purchase a replacement home in Texas.  The policy, like

23   the Universal policy at issue here, provided the least of three potential measures of indemnity for

24   the loss of the insured property: (1) the policy limit ($413,446.42), (2) the replacement cost to

25   rebuild at the insured premises ($375,446.42), or (3) the necessary amount actually spent to

26   repair or replace the damaged home ($358,576.81 to purchase the new home in Texas). *Id.* at

27   698.  The insurer paid $358,576.81, the actual amount spent to replace the property, the lesser of

28   the three amounts.  In reliance on California Insurance Code section 2051.5, plaintiff asserted the

18

Selman Breitman LLP
ATTORNEYS AT LAW

1  insurer was obligated to pay $375,446.42, the hypothetical replacement cost, and was in breach

2  of contract for failing to pay that amount.[3]

3      Based on section 2051.5(c), the plaintiff in *Tyler* argued the insurer was obligated to pay

4  the hypothetical replacement cost even if it was not the least of the three measures. The *Tyler*

5  court rejected plaintiff's argument explaining that section 2051.5(c) was meant to qualify section

6  2051.5(a) and prevent an insurer from calculating a hypothetical replacement cost based on the

7  cost to replace at another location as opposed to the cost to repair the destroyed property.

8  However, the court clarified that section 2051.5(c) did not allow an insured to recover the

9  hypothetical replacement cost without regard to the amount actually spent to replace the

10 property. *Id.* at 699-700. The *Tyler* court explained that Tyler was not entitled to receive the

11 replacement cost unless it was the appropriate measure of recovery, i.e., the lesser of the three

12 measures under the policy. *Id.* at 701. Because the replacement cost was not the lesser of the

13 three measures, it was not the appropriate measure of recovery. In granting judgment in favor of

14 the insurer, the *Tyler* court relied on *Conway*, 26 Cal. App. 4th at 1190, *supra*, and held that

15 plaintiff was not entitled to receive more than she actually expended to buy another home

16 because the purchase price of the new home was less than the policy limit and the cost to rebuild

17 her home.

18     As discussed in *Conway* and under section 2051.5, Plaintiff's purchase of a new property

19 in Virginia constitutes "replacement" under the Universal policy. To determine the RCV to

20 rebuild the insured home, Universal obtained from three different construction companies the

21 following replacement cost estimates to rebuild the insured premises at the insured location: (1)

22 $303,002.39 (Rimkus); (2) $306,646.52 (Service Team of Professionals); and (3) $288,133.73

23 (Lawton Construction).[4] The amount owed under the Loss Settlement provision where the

24 insured opts to purchase a new property is the *lesser* of the policy limit ($338,000), the RCV to

25 rebuild the insured property (the highest RCV estimate was $306,646.52, which included

26 

_____

27 [3] Plaintiff in *Tyler* was also represented by Plaintiff's counsel in this case.

28 [4] Plaintiff did not submit any RCV estimate to challenge the RCV estimates obtained by Universal before this lawsuit.

19

4895 100153 4842-5432-0802 v3

**Selman Breitman LLP**
ATTORNEYS AT LAW

1   Ordinance or Law upgrades), or the amount actually spent to replace the insured property

2   ($415,000 to purchase the Virginia home).  Universal agreed to pay the policy limit of $338,000

3   before it obtained replacement cost estimates for the property, which were less than the limit of

4   liability. Moreover, because the RCV estimates did not exceed the $338,000 Coverage A policy

5   limit, the Additional Dwelling Coverage A provided under endorsement form HO 23 56 did not

6   apply.  For these reasons, Plaintiff is not entitled to any additional policy benefits for Dwelling

7   Coverage A based on the estimates obtained by Universal.

8           **C.**    **Plaintiff Did Not Make a Claim for Additional Dwelling Coverage Policy Benefits Under the Endorsement Based On a Replacement Cost Estimate and**

9                   **Should Be Barred From Seeking Recovery in this Lawsuit**

10        Plaintiff for the first time provides in her motion an RCV estimate in the amount of

11   $552,105.71, which is significantly higher than all three of the contemporaneous RCV estimates

12   obtained by Universal.  Plaintiff did not submit any RCV estimate to challenge the RCV

13   estimates obtained by Universal during the claim investigation or make a claim for additional

14   policy benefits under the Additional Dwelling Coverage A Endorsement at any time before this

15   lawsuit was filed several years after the claim was closed.

16        In similar circumstances where insureds sued their insurer to recover policy benefits that

17   were never requested during the claim, this court held that failure to pay those policy benefits

18   could not support a breach of contract or bad faith claim against the insurer.  *Moncada v. Allstate*

19   *Ins. Co.* (N.D. Cal. 2006) 471 F.Supp.2d 987. In *Moncada*, plaintiffs tried to make a breach of

20   contract claim based on withheld payment for personal property contaminated with lead,

21   asbestos, mold and bacteria, which was precluded by the court because there was no evidence

22   that they made a claim for such damage.  The plaintiffs in *Moncada* also claimed that the insurer

23   improperly withheld payment for water damage, but again the court held that Allstate was not

24   obliged to pay claims that were never submitted.  *Moncada* at pp. 94-95.  Ultimately, the court

25   found that Allstate's failure to pay claims that were never made cannot establish a breach of

26   contract.

27        If the court considers Plaintiff's belated RCV estimate, a decision as to whether

28   Plaintiff's RCV estimate triggers the endorsement will require expert analysis and discovery,

4895.100153.4842-5432-0802.v3

Selman Breitman LLP
ATTORNEYS AT LAW

1   which the parties have not yet conducted, so the issue of whether Plaintiff's RCV estimate

2   triggers additional coverage under the endorsement is premature at this time.  Moreover, this

3   issue is not before the court on these motions that are limited to whether the lawsuit is time-

4   barred by the contractual suit limitation period and how Dwelling Coverage A is paid out under

5   the Policy, but the fact that the cost to rebuild is the same as or very close to Plaintiff's Fair

6   Market Value estimate of $497,000 to $599,000 (Plaintiff's Motion, p. 22:4; Mohamed Decl.) is

7   suspect as the rebuild cost is usually significantly lower than the fair market value because it

8   does not include the cost of the land the home is built on. It is also not clear that Plaintiff's RCV

9   estimate is truly based on construction prices immediately before the loss in October 2017 and

10  whether the estimate for Ordinance and Law ($96,200.26) is legitimate. (See Plaintiff's Romero

11  Decl., Exhibit B, pp. 4-7.)

12          Plaintiff alleged in her Complaint that the measure of Dwelling Coverage is Actual Cash

13  Value (Complaint, ¶ 9, **Exhibit 1**), but now claims that she is entitled to an additional $77,000

14  based on the purchase price of her new home in Virginia as the lesser value of the replacement

15  cost ($552,105.71 RCV estimate, Romero Decl., Exhibit B), the amount to purchase her new

16  home ($415,000), the policy limit plus the endorsement ($422,500), and the Actual Cash Value

17  ($497,000 to $599,000, Mohamed Decl.).  (Plaintiff's Motion, p. 22:10-14.)

18          Plaintiff's argument is erroneous for several reasons.  First, Plaintiff's RCV estimate

19  appears to be grossly inflated as it is approximately $245,000 over the highest RCV estimate

20  obtained by Universal, and within the same range as Plaintiff's fair market value estimate, which

21  includes the land.[5]  Second, Plaintiff's new home in Virginia was a betterment as it was a 3,961

22  sq. ft. home with 5 bedrooms and 3.5 bathrooms (Universal's **Exhibit 7**) compared to the insured

23  property, which was 1,517 sq. ft. with 3 bedrooms and 2 bathrooms.  (See Plaintiff's Romero

24  Decl., Exh. B, p. 54.) The Policy covers replacement of an equivalent home, not a better home.

25  Cal. Ins. Code § 2071; *Fire Ins. Exch. v. Superior Ct.* (2004) 116 Cal. App. 4th 446, 460–61;

26

27

28
_____

[5] The Policy expressly provides that the Dwelling Coverage does not cover land, "including land on which the dwelling is located." (Policy, **Exhibit 2**, p. Universal000008.)

Selman Breitman LLP
ATTORNEYS AT LAW

21

4895.100153 4842-5432-0802 v3

*McCorkle v. State Farm Ins. Co.* (1990) 221 Cal.App.3d 610, 614, ("the purpose of fire insurance—to compensate for the actual loss sustained, not to place the insured in a better position than he or she was before the fire.")  Third, Plaintiff is basing her analysis on the Additional Coverage Endorsement before determining whether the loss exceeds the $338,000 limit of liability in the Declarations under the Loss Settlement provisions in the Insuring Agreement.  Even the Additional Coverage Endorsement requires that the RCV exceed the $338,000 limit of liability before the Endorsement applies – "APPLIES ONLY WHEN LOSS TO BUILDING INSURED UNDER COVERAGE A EXCEEDS THE COVERAGE A LIMIT OF LIABILITY SHOWN IN THE DECLARATIONS".  (Policy, **Exhibit 2**, pp. Universal0000048-49.)  The Endorsement does not apply where the cost to rebuild the house at the insured location is less than the $338,000 Dwelling Coverage policy limit, as reflected in the RCV rebuild estimates obtained by Universal.  Fourth, the insured replaced the property by purchasing a home in Virginia, so the Actual Cash Value (ACV) is not relevant to any coverage analysis as the Policy expressly provides that once the insured property is replaced, the loss is paid based on whether the replacement cost is lower or higher than the Dwelling Coverage A limits as set forth in the C. Loss Settlement provision, Section I-Conditions, C.2.  (Policy, **Exhibit 2**, pp. Universal0000018.)

The bottom line is that Plaintiff cannot now assert a breach of contract and bad faith action against Universal based on a purchase price for a home that was more than twice the square footage of the insured property or on a replacement cost estimate to rebuild the insured home that was never presented to Universal during the claim investigation.

**D.    Universal is Not Obligated to Pay Plaintiff Additional Debris Removal Coverage Amounts Under the Policy Because Plaintiff Assigned Her Right to Debris Removal Coverage to the County of Sonoma**

Plaintiff asserts that Universal breached the Policy by failing to pay Plaintiff for debris removal under the increased Ordinance or Law Coverage in the amount of $84,500.  *Executive Risk Indem., Inc. v. Jones* (2009) 171 Cal.App.4th 319, 325, fn. 6. (holding that an assignment frees the insured from monetary liability and allows the assignee to step into the shoes of the insured.)  There is no dispute that pursuant to the Debris Removal Right of Entry Permit

22

Universal's Points & Authorities In Support Of Cross Motion For Summary Judgment/ Opposition To Plaintiff's Motion For Summary Judgment – Case No. 3:21-cv-03112-MMC

4895.100153.4842-5432-0802.v3

1   between Plaintiff and Sonoma County, the insured assigned her rights to debris removal

2   coverage under the Policy to the County, so Plaintiff is not entitled to recover for debris removal.

3   Universal received a debris removal invoice for Plaintiff's property directly from Sonoma

4   County in the amount of $80,042.41.  Universal issued payment in the amount of $16,900

5   directly to the County under the Debris Removal Coverage (5% of the $338,000 Dwelling

6   Coverage A limit).  Plaintiff has not personally paid any amount for debris removal and cannot

7   establish that additional debris removal amounts were incurred by her.  Plaintiff is not entitled to

8   recover for debris removal under the Universal policy and therefore she has no contractual

9   damages under the Debris Removal Coverage in the Policy.  (See Debris Removal Right-of-

10  Entry Permit and County of Sonoma Invoice for Debris Removal, Universal's **Exhibits 11-13**.)

11          In *Janney v. CSAA Ins. Exch.* (3rd Dist. App. October 15, 2021) 2021 WL 4810353, at *7,

12  which also involved a wildfire claim, the insured asserted the insurer was in breach of contract

13  for failing to pay the full amount of debris removal coverage owed under her homeowner

14  policy.  In that case, as here, the insured was not personally liable to the City of Weed for debris

15  removal.  Although the insured did not formally assign her right to debris removal coverage

16  under the policy to the City, the City agreed to accept the amount of debris removal coverage

17  provided under the insured's policy.  The court rejected the insured's arguments regarding the

18  amount of debris removal coverage owed because the insured did not have a personal claim for

19  those expenses as a matter of law.  The court pointed out that the undisputed evidence

20  established that the City of Weed agreed that the insured was responsible to pay only the amount

21  of " 'insurance proceeds designated for debris removal.' " The court, therefore, concluded that

22  "the amount to be paid is an issue between CSAA and the City of Weed." *Id*.  Because there was

23  no breach of contract for failure to pay debris removal coverage amounts, the *Janney* court also

24  found there was no bad faith.  *Id*. at *8; *see also Lyle Turner et al. v. Fed. Ins. Co.* (C.D. Cal.

25  2021) 2021 WL 4894272, at *8 (holding no debris removal coverage owed under the policy until

26  amounts incurred by insured).

27  **VI.   CONCLUSION**

28          Based on the foregoing, Universal respectfully requests that this Court GRANT its

Selman Breitman LLP
ATTORNEYS AT LAW

23

4895.100153 4842-5432-0802.v3

1   Motion for Summary Judgment based on the one-year suit limitation provision, the policy

2   provisions governing Loss Settlement for Dwelling Coverage A, and/or partial summary

3   judgment as to no coverage for the cost incurred by the County of Sonoma for debris removal

4   based on Plaintiff's assignment of that coverage to the County of Sonoma.

5

6   DATED:  November 5, 2021                    SELMAN BREITMAN LLP

7                                              By:  /s/ *Bridget A. Moorhead*

8                                                  BRIDGET A. MOORHEAD
                                                   SHERYL W. LEICHENGER
9                                              Attorneys for Defendant UNIVERSAL
                                               NORTH AMERICA INSURANCE
10                                             COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24

Universal's Points & Authorities In Support Of Cross Motion For Summary Judgment/ Opposition To Plaintiff's
Motion For Summary Judgment – Case No. 3:21-cv-03112-MMC

4895 100153 4842-5432-0802  v3