IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLIE JOHNSON-KILLION,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>UNIVERSAL NORTH AMERICA INSURANCE COMPANY,<br><br>　　　Defendant. | Case No. 21-cv-03112-MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; SETTING CASE MANAGEMENT CONFERENCE** |

Before the Court are (1) plaintiff Leslie Johnson-Killion's ("Johnson-Killion") Motion for Summary Judgment, filed October 7, 2021, and (2) defendant Universal North America Insurance Company's ("Universal") Cross Motion for Summary Judgment, filed November 5, 2021. The motions have been fully briefed. Having read and considered the papers filed in support of and in opposition thereto, the Court rules as follows.[1]

## BACKGROUND

In her complaint, filed March 18, 2021, Johnson-Killion alleges that, on October 9, 2017, a fire destroyed her home, located in Santa Rosa, California (see Compl. ¶¶ 4, 5), and that she thereafter submitted a claim to Universal, which insured the home (see Compl. ¶¶ 4, 7). She further alleges that, although she was entitled under the policy to $422,000 for the loss of the home, Universal paid only $338,000 (see Compl. ¶ 9),[2] and that, although she was entitled under the policy to $106,000 in coverage for "debris

---

[1] By order filed February 9, 2022, the Court took the matters under submission.

[2] As set forth below, plaintiff now contends she is entitled to $415,000, not $422,000, for the loss of the home.

removal costs," Universal paid only $16,900 on a debris removal bill of $80,042.41 (see Compl. ¶ 8).  Given the above allegations, Johnson-Killion asserts two Causes of Action, titled, respectively, "Breach of Insurance Contract" and "Breach of the Implied Covenant of Good Faith and Fair Dealing."

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  See Celotex, 477 U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  "If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. at 249-50 (citations omitted).  "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion."  See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

## DISCUSSION

In their respective motions, the parties address three issues: (1) whether Johnson-Killion's claims are barred by a one-year contractual limitations provision; (2) whether Johnson-Killion is entitled to additional coverage for the loss of her residence; and

2

(3) whether Johnson-Killion is entitled to additional coverage for debris removal costs. The Court considers these three issues in turn.

**A. Contractual Limitations Provision**

The policy provides that "[n]o suit can be brought against [Universal] unless . . . the action is started within one year after the date of loss." (See Grimm Decl. Ex. 2 at Universal 000036.)[3] Such a limitations period is deemed tolled from the date on which the insured "gives notice of the damage to his insurer" to the date on which "coverage is denied." See Prudential-LMI Commercial Ins. v. Superior Court, 51 Cal. 3d 674, 693 (1990).

In the instant case, it is undisputed that Johnson-Killion reported the loss of her home on October 9, 2017, the date of the fire (see Grimm Decl. ¶¶ 7-8), that, on November 4, 2017, Universal paid Johnson-Killion the amount of $338,000 in benefits (see Johnson-Killion Decl. Ex. 8), and that, on April 11, 2018, and, again, on August 8, 2018, Universal declined to pay Johnson-Killion any further amount for the loss of the home (see id. Ex. 1; Grimm Decl. ¶ 15, Ex. 10). Although Johnson-Killion, relying on language in a letter her counsel received from Universal (see O'Connor Decl. Ex. 2, second page), argues her claim was not "closed" until October 4, 2019,[4] as opposed to August 8, 2018, the date Universal asserts is the date on which the one-year period began to run, such dispute need not be resolved herein, as the instant action was filed March 18, 2021, a date more than one year after October 4, 2019, the date on which Johnson-Killion relies.

Accordingly, to the extent Johnson-Killion's claims are based on the alleged failure to pay all benefits owing for the loss of her home, such claims, in the absence of a

---

[3] The exhibits referenced in the Declaration of Donald M. Grimm are filed as attachments to a separately filed "Compendium of Exhibits."

[4] In the letter, Universal stated, "our file was closed 10/4/19" (see id.), the date on which, as discussed below, Johnson-Killion's claim to recover the cost of debris removal was paid in part.

showing that the above-quoted limitations provision is not enforceable, are barred.

Next, it is undisputed that a claim for recovery of debris removal costs in the amount of $80,042.41 was submitted to Universal by the County of Sonoma ("County") on September 25, 2019 (see Grimm Decl. Ex. 12), and that Universal, by letter dated October 4, 2019, advised Johnson-Killion that it would only pay $16,900 of the amount claimed (see id. ¶ 19, Ex. 13).  Accordingly, even using October 4, 2019, as the date of denial, Johnson-Killion was contractually required to file, no later than a year from that date, any claims based on an alleged failure to pay all benefits owing for debris removal, and, as she did not file the above-titled action until March 18, 2021, such claims, in the absence of a showing that the above-quoted limitations provision is not enforceable, likewise are barred.

In arguing the one-year contractual limitations provision is not enforceable, Johnson-Killion relies on a theory of estoppel set forth in two cases, specifically, Spray, Gould & Bowers v. Associated Int'l Ins. Co., 71 Cal. App. 4th 1260 (1999) (hereinafter, "Spray"), and Superior Dispatch, Inc. v. Insurance Corp. of New York, 181 Cal. App. 4th 175 (2010), wherein the California Court of Appeal, citing title 10 of the California Code of Regulations, section 2695.4(a), held an insurer is not entitled to summary judgment based on a contractual limitations provision, where the plaintiff offers evidence that (1) the plaintiff was unaware of said provision, and (2) the defendant, independent of the policy itself, had not advised the plaintiff of said provision.  See Spray, 71 Cal. App. 4th at 1267-75; Superior Dispatch, 181 Cal. App. 4th at 190-91; see also Cal. Code Regs. tit. 10, § 2695.4(a) (providing "[e]very insurer shall disclose to a first party claimant or beneficiary, all benefits, coverage, time limits or other provisions of any insurance policy issued by that insurer that may apply to the claim presented by the claimant").

Here, like the plaintiffs in the cases on which Johnson-Killion relies, Johnson-Killion has offered evidence that (1) she "was unaware of the 12-month limitations period stated in the [p]olicy," and (2) Universal "never disclosed to [her] the 12-month limitations period stated in the [p]olicy" (see Johnson-Killion Decl. ¶ 4), which latter statement is

corroborated by four letters she received from Universal on various dates between November 4, 2017, and October 2, 2019, none of which contains any disclosure of, or reference to, the 12-month contractual limitations provision (see id. Exs. 1, 8).

In response, Universal offers no evidence to the contrary. Rather, Universal argues Spray and Superior Dispatch are distinguishable on their facts, in that the defendant in each of those cases had denied the plaintiff's claim, whereas, in the instant case, Universal accepted Johnson-Killion's claims and paid benefits to her. The amounts paid, however, reflect a denial of Johnson-Killion's claims in part, and nothing in § 2695.4(a) limits the requisite disclosure to situations where a claim is denied in full. Indeed, the language of the regulation would indicate otherwise, given that the duty to disclose is triggered by "the claim presented," see Cal. Code Regs. tit. 10, § 2695.4(a) (providing insurer "shall disclose . . . all . . . time limits . . . that may apply to the claim presented by the claimant"), in other words, at the outset of the claims process, and, assumedly, before the insurer has decided what action to take.

Accordingly, Universal is not entitled to summary judgment on its contractual limitations defense.

Neither, however, is Johnson-Killion so entitled, as the "reasonableness of [a plaintiff's] reliance on [a defendant's] nondisclosure of [a] contractual limitations provision, that is, the reasonableness of [the plaintiff's] failure to discover the provision by other means, is a question of fact," see Superior Dispatch, 181 Cal. App. 4th at 190-91 (emphases added), and Johnson-Killian has not offered evidence bearing on that question.

In sum, to the extent the parties seek, respectively, summary judgment on Universal's contractual limitations defense, the motions will be denied.

**B. Coverage for Loss of Residence**

In a section titled "Coverage A," the policy provides coverage for Johnson-Killion's home in Santa Rosa. (See Grimm Decl. Ex. 2 at Universal 000003, 000008.) Specifically, under Coverage A, Johnson-Killion is entitled to the "least of the following

amounts: (1) [t]he limit of liability under [the] policy that applies to the building; (2) [t]he replacement cost of that part of the building damaged with material of like kind or quality and for like use; or (3) [t]he necessary amount actually spent to repair or replace the damaged building." (See id. Ex. 2 at Universal 000018.)

      The limit of liability applicable to Johnson-Killion's residence is $338,000 (see id. Ex. 2 at Universal 000003), unless the "loss to the building" exceeds $338,000 (see id. Ex. 3 at Universal 000048), in which case, in light of additional coverage purchased by Johnson-Killion, the limit is $422,000 (see id. Ex. 2 at Universal 000004 (identifying "Additional Amount of Insurance – 25%")).

      The parties disagree, however, as to the amount payable under the above policy terms. As relevant to that disagreement, the following facts are undisputed. On October 9, 2017, Johnson-Killion, as noted, reported the loss of her home (see id. ¶¶ 7-8), and, on November 4, 2017, Universal paid Johnson-Killion benefits in the amount of $338,000 (see id. Ex. 5; Johnson-Killion Decl. Ex. 8.) Thereafter, Universal obtained two estimates for the cost to rebuild at the insured location, in the amounts of, respectively, $303,002.39, and $306,646.52 (see Grimm Decl. ¶¶ 11, 13, Exs. 6, 8), and was advised by Johnson-Killion that she had "elected to replace" her Santa Rose home by purchasing, in March 2018, a home in Virginia for $415,000 (see Johnson-Killion Decl. ¶¶ 13-14; Grimm Decl. ¶ 12, Ex. 7). Subsequently, by letter dated April 11, 2018, Universal advised Johnson-Killion that, given that the estimated cost to replace the damaged residence was less than $415,000, it had determined "the payment issued of $338,000 is adequate to replace the home lost due to fire." (See Johnson-Killion Decl. Ex. 1.) Next, on June 27, 2018, Universal obtained a third estimate, in the amount of $288,133.73, to rebuild at the insured location (see Grimm Decl. ¶ 14, Ex. 9), and, by letter dated August 8, 2018, so advised Johnson-Killion and reiterated its previous determination that "the payment issued of $338,000 is adequate to replace the home lost due to fire" (see id. Ex. 10). Lastly, on October 6, 2021, i.e, after the instant action was filed, Johnson-Killian obtained an estimate from a contractor, in the amount of $552,105.71, as the cost to

replace the damaged residence.  (See Romero Decl. ¶ 1, Ex. B at 50.)

In seeking summary judgment on Johnson-Killion's claim for further policy benefits, Universal, citing Moncada v. Allstate Ins. Co., 471 F. Supp. 2d 987 (N.D. Cal. 2006), argues the estimate Johnson-Killion recently acquired is not admissible because, according to Universal, she never made a claim for benefits in excess of $338,000.  See id. at 994-95 (granting summary judgment in favor of insurer on breach of contract claim to extent insured sought payment for losses it never reported).  Contrary to Universal's argument, however, Johnson-Killion has submitted evidence that she did seek, during the claims process, benefits in excess of $338,000.  (See O'Connor Decl. Ex. 1 (Universal claims file "Note" reporting "Insured disputing the Cov A payment");[5] see also Johnson-Killian Decl. Ex. 1 (letter from Universal, dated April 11, 2018, acknowledging receipt of "home purchase documents . . . in the amount of $415,000"; explaining its decision not to pay benefits in excess of $338,000); id. (letter from Universal, dated August 8, 2018, reiterating explanation as to decision not to pay benefits in excess of $338,000).)  Consequently, Universal fails to show the estimate obtained by Johnson-Killion is not admissible.

The Court, however, is not persuaded by Johnson-Killion's argument that, as a matter of law, she is entitled to benefits in the amount of $415,000 rather than $338,000, which argument is based on the theory that the $552,105.71 estimate she received must be accepted, and, that the $415,000 she paid to replace her residence, being both less than said estimate and less than the increased policy limit of $422,000, is the proper sum.  Although in support thereof Johnson-Killion has offered evidence from which a trier of fact could find the estimates on which Universal relies are flawed (see Romero Declaration for Reply ¶ 3 (identifying "defects" in estimates obtained by Universal, including use of "wrong" square footage and omission of work required "for code compliance")), such evidence does no more than raise a triable issue.

---

[5] As noted, Johnson-Killion's home is insured under Coverage A of the policy.

Accordingly, neither party is entitled to summary judgment on Johnson-Killion's claim for additional benefits for the loss of her residence.

**C. Coverage for Debris Removal**

The policy includes two provisions pertaining to the cost of debris removal.

First, in a provision titled "Debris Removal," the policy states: "We will pay your reasonable expense for the removal of . . . [d]ebris of covered property if a Peril Insured Against that applies to the damaged property causes the loss,"[6] and that, where the "amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense." (See Grimm Ex. 2 at Universal 000010.) Consequently, the parties agree, the coverage potentially available under the Debris Removal provision is $16,900 (5% of $338,000).

Second, in a provision titled "Ordinance or Law," the policy states: "You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates . . . [t]he construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against," and that such coverage can be used "to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair, or replacement of property." (See id. Ex. 2 at Universal 000013.) Further, pursuant to an Endorsement for which Johnson-Killion paid an additional premium, the coverage available under the Ordinance or Law provision is "increased" to 25% of the limit of liability. (See id. Ex. 2 at Universal 000004, 000047.) Consequently, as Johnson-Killion asserts, and Universal has not disagreed, the coverage potentially available under the Ordinance or Law provision is $84,500 (25% of $338,000).

---

[6] The "Perils Insured Against" are "risk[s] of direct physical loss to property described" in the policy. (See Grimm Decl. Ex. 2 at Universal 000013.)

8

The parties disagree, however, as to the amount payable under the above policy terms.  As relevant to that disagreement, the following facts are undisputed.  On November 12, 2017, Johnson-Killion and the County entered into an agreement titled "Debris Removal Right-of-Entry Permit" (hereinafter, "the Permit") under which Johnson-Killian gave the County permission to enter her property "for the purpose of . . . removing and clearing any or all wildfire-generated debris of whatever nature." (See Johnson-Killion Decl. Ex. 3 at 1.)  Additionally, the Permit requires Johnson-Killion to "assign[ ] to County any and all insurance proceeds [she] would be entitled to for the removal of debris and damaged items" (see id. Ex. 3 at 2), and further provides that Johnson-Killion "has an obligation to file an insurance claim if coverage if available" (see id. Ex. 3 at 3). In an "Invoice for Debris Removal – Sonoma Complex Fires," sent by the County to Universal and dated September 25, 2019, the County stated the "costs incurred" to remove debris from Johnson-Killion's property totaled $80,042.41. (See Grimm Ex. 12.) Thereafter, Universal, by letter dated October 2, 2019, advised Johnson-Killian it was paying $16,900 on the invoice, i.e., the maximum amount available under the Debris Removal provision, and enclosed a check in that amount, payable to the County.  (See Johnson-Killian Decl. Ex. 8.)

Johnson-Killian argues she is entitled to summary judgment on her claim for additional policy benefits under the Ordinance or Law provision, specifically, judgment in the amount of $63,142.41, constituting the difference between the $80,042.41 invoiced amount and the $16,900 payment.

Where a party seeking summary judgment "bears the burden of proof at trial, he must come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial."  See Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992) (internal quotation and citation omitted); see also Fontenot v. Upjohn, 780 F.2d 1190, 1194 (5th Cir. 1986) (holding where plaintiff moves for summary judgment on issue upon which he bears burden of proof, he "must establish beyond peradventure all of the essential elements of the claim") (emphasis in original).  Consequently, to meet her

9

initial burden to show entitlement to summary judgment, Johnson-Killion must offer evidence that, if unrebutted, would establish her entitlement to the additional policy benefits she claims. Johnson-Killion, however, fails to identify any ordinance or law that required her to construct, demolish, remodel, renovate, or repair her Santa Rosa home, let alone offer evidence that, as a result of such required construction, demolition, or other work, she incurred debris removal costs. (See Grimm Decl. Ex. 2 at Universal 000013 (providing additional coverage for debris removal where, "due to enforcement of any ordinance or law which requires or regulates . . . [t]he construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against," insured "incur[s]" costs "to remove debris resulting from the construction, demolition, remodeling, renovation [or] repair" of covered building).

Accordingly, Johnson-Killion is not entitled to summary judgment on her claim for additional benefits for costs incurred for debris removal. See Heinemann v. Satterberg, 731 F.3d 914, 916-17 (9th Cir. 2013) (holding, even where no opposition filed, summary judgment may be granted only where "the motion and supporting materials . . . show the movant is entitled to it").

Neither, however, is Universal so entitled, as the argument it makes, specifically, that, under the Permit, Johnson-Killian assigned any claim for additional policy benefits for debris removal to the County, is not supported by undisputed evidence. Although an "insured involved in a coverage dispute with its insurance company may assign its claim against the insurance company to [another]," who then "step[s] into the shoes of the insured" for purposes of bringing "claims the insured might have had," see Executive Risk Indemnity, Inc. v. Jones, 171 Cal. App. 4th 319, 325 n.6 (2009), here, Johnson-Killion has submitted evidence sufficient to raise a triable issue as to the scope of assignment, namely, evidence sufficient to support a finding that she only assigned her right to collect whatever benefits are paid for the cost of debris removal, particularly given that the Permit requires her to "file [the] insurance claim" (see Johnson-Killion Decl. Ex. 3 at 3).

Accordingly, neither party is entitled to summary judgment on Johnson-Killion's

claim for additional benefits for costs incurred for debris removal.

## CONCLUSION

For the reasons stated above, Johnson-Killion's motion for summary judgment is hereby DENIED, and Universal's cross-motion for summary judgment is hereby DENIED.

In light thereof, the Court SETS a Case Management Conference for April 15, 2022, at 10:30 a.m., and the parties are directed to file a Joint Case Management Statement no later than April 8, 2022.

**IT IS SO ORDERED.**

Dated: February 23, 2022

MAXINE M. CHESNEY
United States District Judge